Good morning, Your Honors, and may it please the Court, William Yost for Appellant CMA CGM. We ask this Court to reverse the District Court's dismissal of CMA's indemnity claim for failure to file a claim for cargo loss or damage within nine months of delivery. This ruling extinguished CMA's claim before CMA even became aware the claim existed, and as a practical matter, it allows rail carriers like BNSF to avoid liability for their own negligence by imposing timing requirements that will often render compliance impossible. Well, I mean, but your client is a commercial entity, not just a consumer, right? That's right, Your Honor. So your client could have tried to negotiate better terms, couldn't your client? Well, that may be true, Your Honor. Well, I mean, it strikes me that it is true that this is a commercial contract between commercial players, putting COGS aside for the moment. But with regard to the intermodal rules, I mean, if your client had wanted more time, why couldn't it have asked for that? And if BNSF wasn't willing to do it, then your client had to decide whether it wanted to ship or not ship. All right, well, Your Honor, I'd like to address those points because those are, you know, those are obviously important considerations in this case. Now, we don't know, our position is that CMA should not have to pay extra money to negotiate terms that will allow its claim to be extinguished before it comes into legal existence. But I don't understand why not. I mean, I don't understand why, if somebody sets a period of time and you're in the position you are where there might be things on timing that are outside of your control, that if you want the ability to sue only upon becoming aware of your claim, why you shouldn't have to negotiate for that. All right, well, let me answer that question this way, Your Honor. It's going to take me a minute to get to your precise question, but I am going to get there. So in Kirby and Regal Beloit, the Supreme Court emphasized uniformity, predictability, and commercially sensible rules governing international transportation under through bills of lading. When you have COGSA and the role of an NVOCC, there's clear tension between COGSA's one-year time bar and the nine-month provision in the intermodal rules. Now, in this case, the timing requirements, and I am going to get to your question, Your Honor. This case, the timing requirements, the timing issues perfectly illustrate the problem, okay? WACOM, the cargo owner, files suit against the NVOCC expeditors just shy of the one-year anniversary of delivery. Expeditors then file suit against CMA three months later. We're now 15 months past the point of the delivery, and that's the first time that CMA is presented with a claim. But couldn't CMA have protected itself with its own contracts by requiring the same kind of notice or it's forever barred? That's exactly my next point, Your Honor, and the answer to that is no. So CMA, the bill of lading that CMA issues to expeditor incorporates COGSA and contains a one-year time bar provision. Although expeditors filed suit against CMA more than one year after delivery, CMA is unable to seek dismissal of that claim. That is because the federal courts have uniformly decided that an NVOCC's claim against an ocean carrier does not accrue until settlement, regardless of the one-year time bar period in the ocean carrier's bill of lading. But why can't CMA just make an inquiry as to whether the goods arrived in good condition and in complete condition? I mean, I look at the declaration of Mr. Grandy. It doesn't show any diligence in trying to find out whether a safe and complete delivery was actually made by rail. Your Honor, this gets to one of the points that the Supreme Court raised in Kirby, okay? It's about commercial practicalities, okay? This container ship that delivered the subject container carries over 13,000 containers. So what you're asking is, and these are all matters of public record, rails like BNSF, they move millions of containers a year. And so what you're asking is for CMA to make inquiries that will require a substantial burden to figure out whether these cargos were actually delivered. The role of the NVOCC- But this is a private contract. If BNSF wants CMA's business to do that rail delivery, you can impose that requirement that there be a notification as to whether the delivery was complete or not. Well, so there is a provision in the CMA Bill of Lading that says that the shipper has to give notice within three days as to whether the cargo is lost or damaged. And that provision tracks the text of CAWSA, Section 3.6. But all that does is shifts the burden. So ordinarily, if the cargo interest gives notice within three days, it's the ocean carrier's burden to prove a liability defense. If the shipper doesn't give notice within three days, that doesn't mean their claim is extinguished. It just means they have the burden to prove that the ocean carrier was negligent. You can see that all of your causes of action are based on cargo loss or damage that you think BNSF is responsible for. No, Your Honor. Our claim is a distinct claim. It is an indemnity claim, which does not accrue until liability is established. In States S.S. Co. versus American Smelting, this court drew a sharp distinction between direct claims, which accrue at the time of delivery, because that is when the cargo interest becomes aware of the claim, and indemnity claims, which do not accrue until the indemnity makes payment. This court said that imposing a time of delivery requirement on indemnity claims would result in illogical and unreasonable situations. So when we think about this case- But can I ask you, the States S.S., that was dealing with a statutory time limit provided by COGSA. So why would that necessarily control private parties' contractual time limits? Well, that gets back to the point I was making before, Your Honor. So I cited numerous cases in the brief. I believe they're on page 9 and 10 of the reply brief, where the federal courts uniformly hold that an NVOCC's claim against an ocean carrier is an indemnity claim that does not accrue until payment, regardless of the contract. And there's no uniform basis to apply one accrual rule to an NVOCC's claim against an ocean carrier and a different accrual rule to an ocean carrier's indemnity claim against a rail carrier, especially when they arise from the same shipment and especially when both parties have a contract that has a timing provision. Counsel, I want to turn for a minute to the issue of gross negligence. Is it your position that there is no allowable statute of limitations for a gross negligence claim? Well, Your Honor, that is the position that we're getting at. All right. So your answer to my question is yes. That is our argument, Your Honor. We didn't cite cases that are directly on point. I'll concede that. So your view is five years, 10 years, 15 years, if somebody tries to make that a statute of limitations, it's under the case law impermissible because any statute of limitations is some type of exculpatory provision. You can't have any, whether it's one year, two years, five years, 10 years, or 20 years? No, Your Honor. Our position would be that it's still controlled by the doctrine of laches, which imposes a diligence standard on the party that made it. But my question deals specifically with a time limit provision in a contract. Your view is there can't be any because any such one, whether Royal Insurance or some other case that you're relying on, is an exculpatory provision that's not allowable for gross negligence, no matter how long it is, as long as it's a contract provision with a time limit? I'm saying, I think what Your Honor is saying is suggesting a rule that goes beyond what we're arguing here. We're arguing that an exculpatory provision should not be enforceable in the context of gross negligence. And I'm asking, is, in your view, every statute of limitations provision, every limitations provision in a contract barred because of that? And if not, how do we determine whether it can be nine months, one year, or 20 years? I think that the issue that we have with the nine-month time bar provision is that it forces the claim, it allows the claim to be extinguished before it comes into legal existence. And so we're saying that you could still, even in the context of a gross negligence claim, set a time bar that starts at the point of accrual of the indemnity claim, rather than the point of delivery. That's what this court in States Esco warned against. Can I ask you, I'm looking at your complaint, and it says on paragraph 44, if CMA is held liable or settles underlying claims, then such will be solely due to BNSF's breach of the BNSF rules or other applicable contract in failing to safely and securely transport and deliver the goods. So just reading that paragraph in your complaint, I don't see then why that's not a claim for cargo loss or damage. You say failing to safely and securely transport and deliver the goods. Yes, again, so Your Honor, there's a legal distinction between a claim for cargo loss or damage. That implies a direct claim, proprietary ownership in the party that's making the claim. We have a legally distinct claim, which is an indemnity claim, which does not come into legal existence until we incur a liability. In States Esco, this court acknowledged that. In States, the party pursuing the claim, it was a salvage claim, and they didn't have a claim until they had to pay a liability. Let me ask you one other question, because we did go over States SS as a COGS and a statutory limitation. You state in your brief that the district court enabled BNSF to evade liability for its own negligence through procedural gamesmanship. Can you explain what that procedural gamesmanship was? Yes, Your Honor. So BNSF is well aware that COGS has a one-year statute of limitations. And so there's a clear tension between COGS's one-year statute and the nine-month period in the BNSF rules. That tension is even more pronounced in cases like this when there's an NVOCC in the contract chain, because, again, this situation is entirely predictable where CMA is not going to be served with a claim until 15 months after delivery. And so it's our position that rail carriers should not be able to take advantage of the one-year statute, which CMA cannot shorten because it's a federal statute. This case also has important implications for other subcontractors. So CMA will subcontract with rail carriers, with motor carriers, and with terminal operators. And in Calumet, the Seventh Circuit addressed a case with the terminal operator. The terminal tariff had a one-year time bar provision. The ocean carrier settled a claim and then filed suit against the terminal operator more than one year later. That court recognized that it was an indemnity claim that did not accrue until settlement. So, Counsel, you're over your time, but we've taken a lot of your time with questions. We'll give you two minutes for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Paul Lawrence for BNSF. Your Honors have made many of the points that I wanted to make since 1914 in the Northern case, the U.S. Supreme Court has made clear. Let me ask you, if I look at your intermodal rules, I find you have language about indemnify a minimum of six other times, right? I mean, let's go through the paragraphs on, you know, 23, page 28. So if you, your sophisticated party, if you had wanted to do a specific claim, carve out of indemnity claims, you could have done that. You clearly know when to include indemnification and indemnity in your own rules when you want to. With all due respect, I believe the use of indemnity in the intermodal rules supports BNS's position. In all the cases that, sorry, that indemnity is cited in the intermodal rules, it's requiring the other party to indemnify BNSF. BNSF knows the difference between asking someone to identify them and the fact that with respect to the carriers, the shippers in this instance, the rules says all claims- But why does it matter whether the indemnity is owed to BNSF or whether BNSF is liable for indemnity? Like you seem to know in your own contract, when you want to make a special rule for indemnity, you do it and you didn't in these time limitation provisions. Again, with all due respect, I think the point is just you're missing the point. The point is that, yes, BNSF understands the difference between an indemnity claim and a claim for cargo loss or damage. And they could have separated out indemnity claims or not, but the language in the intermodal agreement is very clear. It's all claims for cargo loss and damage. And so, yes, the fact that they understood there was a difference actually supports the notion that all claims means all claims. It doesn't exclude any category of claims like indemnity claims. And the bottom line on the question of indemnity, as the case law I think makes clear, is that, look, there's no blanket rule that says indemnity in, indemnity out. It depends upon what is the nature of the indemnity claim. If the indemnity claim is a straightforward claim for loss or damage of cargo, then it can be excluded by these rules. If it's for something else, like in the SS States case, as you point out, or in the Hercules case, it's not related to cargo, then it would not be included in any sort of bar, like the contract here at issue. So, I think- But how is it foreseeable for CMA? Because there are nine certain cases, like States SS should know. It's foreseeable for the same reason that you pointed out, why SS States doesn't apply to an indemnity claim for- But, no, it doesn't matter. The reasoning that the court relied on in interpreting COGSA limitation could equally apply to a private contract. With all due respect, I think the reasoning was very clear, that because it was not a claim for damage, it was a claim to the vessel. The same reasoning that the Fifth Circuit applied in Hercules, that they didn't, they separately dealt with cargo claims. The reason why the one claim that had been thrown out in Hercules would change was because it was not a cargo claim. It had to do with damage to the vessel or damage to towing. So, I think- It didn't have to do with the fact that it's a vessel. It had to do with when does the claim actually arise? With all due respect, Your Honor, I believe that it involved both those issues. And the claim, and the bottom line is, if you have a claim for loss or damages, it arises at the time of delivery. And, you know, they say this is an impractical, improbable way for people to do it. First of all, Kirby makes it clear that you have the right to contract, we'll give you the rules, but you always have the right to contract that goes back- I mean, let's just go to the language of States SS, okay? Such is not the case with the usual indemnity claim where cause of action does not accrue until the indemnity has made actual payment. I don't see anything in here about vessel. It's saying because the claim doesn't even accrue, doesn't even exist. That's why we're finding this. Well, if you look at at page, sorry, I'm not sure if I'm getting my page. It looks like it's, I can't, it's the last page of the opinion. I'm sorry, I can't see on my little screen here. It says, it describes what the gravamen of the claim is, is they failed to exercise is because of a salvage operation. So it was clearly looking at the question of is this related to loss or damage of goods or was this related to something else? I'm looking at the last page too. Thus imposing a time of delivery starting date upon actions such as we have before us would give rise to an illogical and often unreasonable situation. Well, it's neither logical, illogical or unreasonable. First of all, this court in the MSC versus BNF decision address this very point. Granted, it's an unpublished decision, but the court rejected the same arguments as the trial court did that when you have a clear line and where there's a claim that's disguised as an indemnity claim, which is really a claim for loss or damage, it's encompassed by the BNSF's intermodal rules. And this notion that there's any unfair and equitable about it doesn't make any sense. We're, this is a big company. They know that these goods are being delivered and picked up by expediters. It's very easy for them to send an email to expediters. Did you get the, did you get the goods in good order? Did you open the goods? And, or they can even go old school and call them. And if they had, expediters said, hey, we opened it up. There was nothing there. And in fact, we made a report to the police. So the fact that they are undertaking this obligation to report a claim to BNSF within nine months, they know about it. They're a sophisticated company. They can take steps like deliverers take step all the time. Did you get your package? So I want to change focus here a minute. So if I were looking at a claim or a putative claim for gross negligence, and I were looking at the COGSA statute, the COGSA one-year limitations, is it your view that that is a statute that is a provision of limitation or repose? The statute in COGSA, I think, has been very strictly applied, which would mean that it's a repose. But even if it's a limitation, I think it still would apply. It's not, it's interesting here that they're relying on that. But they didn't file suit within 12 months of delivery at all. So I don't understand really what that argument gets them. As to the gross negligence claim, fundamentally, this is not a gross negligence claim. It's the same factual predicate is explained for their negligence claims. There's no intentional act of the NSF that is alleged related to the loss of the goods. It says you should have known you should have done something. Let me ask a question that I should know the answer to, and I apologize for not. Was there discovery done here? In the underlying case? I can't speak to discovery in the original case by the, against CMA. All I can say in discovery in this case, it was a 12D motion, so there was no particular discovery. The court did allow and there was no objection to consideration of the BNSF intermodal rules as part of its decision. And then there was a declaration of counsel that was submitted that obviously was outside the record that the court disregarded because it didn't really say anything relevant.  So under Royal, why can't CMA proceed with an indemnity action if it plausibly alleges gross negligence? And why shouldn't they be given leave to amend their gross negligence claim? They never asked for leave to amend the gross negligence claim in the first instance. The only thing they think they asked for was to give more specific information as to why it's impracticable to give notice. So that's one reason. But the district court granted dismissal without leave to amend. That's correct. So had it done otherwise, they could have amended their gross negligence claim. In a hypothetical world where they had asked for that right and it presented additional facts that they were going to allege in an amended complaint, then that might be an issue. But that's not what they did. They didn't ask for an amendment to address gross negligence. They didn't purport to provide any additional facts that would take this into the intentional realm of gross negligence. Let's assume for the sake of argument that we rejected that point. Would you still argue that it wouldn't make any difference because the COGSO limitation is repose, not limitation, so it wouldn't matter? A, it wouldn't matter. And B, they haven't pled gross negligence and nor presented any request or facts that could even get to note relevance. So there are two different bases for why the judgment below should be affirmed on that point. I'll just close by saying these are two sophisticated parties. As Judge Benham has pointed out, they have the ability to negotiate a contract. If CMA did not like the contract, they didn't have to use BNSF. There are other rail carriers that were available to them to use that maybe they could have gotten a different contract. The contract is very clear. Should CMA be given leave to amend to raise any normal contract enforcement defenses? I'm sorry, to raise? Any contract enforcement defenses. No, I don't think so, Your Honor. Because I don't know what they have raised all their contract defenses. They've raised that this indemnity claim is outside the scope. They've raised that it's impractical. They ignore the fact that they could have easily contacted their, that in fact, they require the person who's receiving the goods to give them notice that there's a problem. There's nothing that they could raise at this point that would be anything to distinct. Their only argument that they make here is, look, there are a lot of ships. It's a little bit hard. But you can do an email. People do emails all the time. You get how many deliveries is in Fiesta? I'm looking at states SS. And the gravamen is only in the context to identify that the action is an indemnity action. I think if you look at the subsequent cases, you look at the how the cases in Ninth Circuit, including the BNSF case, look at the indemnity claim. What they're saying, what they're asking, is this indemnity claim really an indemnity claim, or is it just a renaming of the claim for loss of damage or of goods that is, has a statute of repose, that is a time limit for repose in the contract? You can't just avoid that by renaming your claim, which is a claim for loss of goods, as an indemnity claim. All right. Thank you, counsel. Thank you, your honors. We would ask the judgment be affirmed. Your honors, counsel raised the point about contracting again, which your honor brought up before. And this also goes to states SSCO and how it's been interpreted. At the time this contract was entered, it was reasonable for CMA to rely on how indemnity claims had been addressed and adjudicated at that point. There were several district court cases, including cases that interpreted prior iterations of the same BNSF rules that are at issue in this case, that held an ocean carrier's indemnity claim against a rail carrier does not accrue until settlement, regardless of the timing provisions in the rail carrier's contract. Those included Tokyo Marine in the Central District of California, Atlantic Mutual in the Western District of Washington, and Hyundai Merchant Marine versus Burlington Northern in the Southern District of Texas. It was not until MSC where a contrary ruling was issued. And respectfully, we think that MSC focused too narrowly on the text of the BNSF rules without considering the wider context and the framework in which the claim is presented, including the point about the NBOCCs and how those indemnity claims are interpreted by other federal courts. Can I ask you a question? Yes. The intermodal rules of BNSF in the MSC memdispo, which is not controlling because it's a memorandum disposition, the language looks a little different than what's in the intermodal rules here. Does that matter? Because there it said, in connection with loss or damage to the cargo, whereas the intermodal rules here have different language. Does that matter? Is that a way to distinguish MSC? Why does it have different language? Was that a different iteration of BNSF's intermodal rules? It's a good point, Your Honor. So there's two timing provisions. There's the claim filing provision, which is at issue in this case, and then there's a lawsuit filing provision that was at issue at MSC. So the claim filing provision refers to claims for cargo loss or damage. Again, it's our position that that's not what CMA is alleging here. We're alleging an indemnity claim. The lawsuit filing provision goes on to say claims for loss or damage must be filed, suits for cargo loss or damage must be filed within nine months. What the MSC court based its ruling on was the third sentence of that clause, which says only a claim filed with BNSF and by a BNSF shipper can qualify as a valid claim for recovery of amounts sought in connection with loss or damage to cargo. They focused on that in connection with language. It's our position that that clause addresses who can bring a claim. Only the shipper can bring a claim in connection with cargo loss or damage. If you're injured by a rail car and you're a third party, certainly you could sue BNSF for personal injuries, but only the shipper can file a claim in connection with cargo loss or damage. That in connection with language does not modify the type of claim, the cargo loss or damage claim that is addressed in the preceding two paragraphs. Respectfully, I think my reading harmonizes both provisions as well as the lawsuit filing provision because I think the MSC court respectfully gave outside weight to that in connection with language out of context. All right. Thank you, counsel. We thank both counsel for their arguments. The case argued is submitted.
judges: BENNETT, KOH, MENDOZA